UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v. ) | Case No.: 24-cr-401 (JDB) |
| ) | |
| BENCE HORVATH, ) | |
| ) | |
| Defendant. ) | |

## STATEMENT OF OFFENSE

Pursuant to Federal Rule of Criminal Procedure 11, the United States of America, by and through its attorney, the United States Attorney for the District of Columbia, and the defendant, BENCE HORVATH, with the concurrence of his attorney, agree and stipulate to the below factual basis for the defendant's guilty plea—that is, if this case were to proceed to trial, the parties stipulate that the United States could prove the below facts beyond a reasonable doubt.

At all times relevant to Count 1 of the Indictment:

1. Defendant BENCE HORVATH ("HORVATH") was a Spanish citizen and a resident of the United Arab Emirates.

2. CO-CONSPIRATOR 1 ("CC 1") was a Hungarian citizen who resided in Gibraltar and Switzerland. CC 1 is HORVATH's mother.

3. ZAO BUDAPHONE ("BUDAPHONE") was a Russian telecommunications company based in Moscow. BUDAPHONE's line of business is the procurement of mobile radio communication devices. CC 1 exercised operational and overall control of BUDAPHONE.

4. LATVIAN PERSON 1 was a Latvian citizen who resided in Latvia. LATVIAN PERSON 1 historically provided freight handling and logistics services for BUDAPHONE,

1

transporting their products into Russia using LATVIAN COMPANY 1 (described below), which he managed.

5.     LATVIAN COMPANY 1 was a Latvia-based freight forwarding company that has been in business since 2018. LATVIAN COMPANY 1's line of business is freight handling and shipping. LATVIAN PERSON 1 was the Corporate Director of LATVIAN COMPANY 1.

6.     SPANISH COMPANY 1 was a Spanish global trading and supply chain management company that has been in business since 2019. HORVATH managed certain aspects of SPANISH COMPANY 1's business beginning in January 2023.

7.     HUNGARIAN COMPANY 1 was a telecommunications company based in Hungary.

8.     PROMSVYAZRADIO LLC ("PRSV") was a telecommunications company based in Moscow, Russia. PRSV directly contracts with various Russian government entities and shares the same phone number and physical address as BUDAPHONE. In some correspondence, HORVATH held himself out as a Deputy Director of PRSV. Based on publicly available information detailing Russian government contracting awards, PRSV has performed work for the Russian Ministry of Internal Affairs and the National Guard of the Russian Federation (also known as Rosgvardiya).

9.     U.S. COMPANY 1 was a U.S.-based company that designs, manufactures, and sells communications equipment, including radios.

10.    U.S. PERSON 1 was a United States citizen who owned and operated a small U.S.-based radio distribution business in Massachusetts.

11.    VENTRADE DOO ("VENTRADE") was a company located in Serbia that PRSV

2

used for the transshipment of goods to Russia.

12. From at least in or around September 2022 to in or around May 2023, HORVATH directed PSRV and SPANISH COMPANY 1, and CC 1 operated, controlled, and directed BUDAPHONE and PRSV, in furtherance of a scheme to obtain, fund, and illegally export controlled communications technologies to Russian end users, including by transshipping cargo through LATVIAN COMPANY 1 in Latvia. In or around May 2023, HORVATH, CC 1, and others engaged in a series of email messages, in which HORVATH explained on May 5, 2023, that to "accelerate [the procurement] process" HORVATH and CC 1 would sell radios manufactured by U.S. COMPANY 1 to "a Spanish company," [ SPANISH COMPANY 1].

13. Beginning in or around January 2023, HORVATH and CC 1 began discussing a series of transactions and attempted transactions that involved procuring and exporting U.S. COMPANY 1 radios and accessories (e.g., radio batteries, multiunit radio charging stations, and microphones) purchased from U.S. PERSON 1, from the United States and elsewhere to Russia via third countries, including Latvia and the United Arab Emirates. Some of these items were controlled for export and re-export to Russia, as described below.

14. On January 31, 2023, HORVATH emailed LATVIAN PERSON 1 with the subject line "Shipping from Dubai / Moscow." The body of the email stated, "The goods are in Dubai inside the Free Trade Zone, and we would like to buy them for Ventrade, the Serbian company. After that, we would like to sell it to PromSviaz [PRSV] and ship to Moscow." This email attached a sales order from U.S. PERSON 1 listing U.S. COMPANY 1 radios. Ultimately, this transaction was never completed.

15. Beginning in or around March 2023, HORVATH continued discussions with U.S.

3

PERSON 1 via email regarding the acquisition of U.S. COMPANY 1 radios and accessories for export from the United States. HORVATH knew that these radios and accessories ultimately were destined for Russia and Russian end users.

16. On or about March 24, 2023, U.S. PERSON 1 emailed HORVATH about end-user information for certain U.S. COMPANY 1 radios, stating, "OK, I need to know End User country for APX2000 and APX2500. If [U.S. COMPANY 1] quotes, the end user will need to complete that form." Later that same day, HORVATH responded to U.S. PERSON 1, saying, "Will ask and get back to you. If they don't provide, I will tell them they cannot do it without." Still later that same day, U.S. PERSON 1 responded to HORVATH, saying, "Those are US Export LAWS, its [sic] not like they have a choice. They either comply or there are no radios." Following the exchange of several more emails, on or about March 29, 2023, HORVATH wrote to U.S. PERSON 1, asking, "Equipment goes to Moscow for public safety use. The end user is the Moscow Police. I just realized that this equipment is actually not sanctioned, it's only [U.S. COMPANY 1] that decided to leave the market. Do you think we can still buy this stuff, or should we give up?" These APX2000 and APX2500 radios, in fact, were subject to export and re-export license requirements imposed by the Department of Commerce. That same day, U.S. PERSON 1 responded, "No Chance [sic][.]" Ultimately, this transaction was never completed.

17. Beginning in or around March 2023, HORVATH continued email discussions with U.S. PERSON 1 regarding the acquisition of U.S. COMPANY 1 radios and accessories for export. In this series of email exchanges, HORVATH attempted to determine the availability of specific models of radios, including the DP4401e, DP4400e, and DP4600e radio models manufactured by U.S. COMPANY 1. Emails between HORVATH and U.S. PERSON 1 discussed basic pricing and

availability, with U.S. PERSON 1 confirming availability of the relevant radios as well as some of the accessories. During these exchanges, U.S. PERSON 1 asked HORVATH where the radios would be going so as to give a freight estimate, to which HORVATH replied that the goods would be shipped to Madrid, Spain.

18. On or about March 30, 2023, U.S. PERSON 1 received an email from HORVATH, stating, "We could potentially order this our self [*sic*], but cannot confirm until later tonight. Please stand by! Thanks." That same date, HORVATH followed up, stating, "They are not answering, but give me 30 minutes and I will confirm the purchase of the DP Radios myself." He then included the model numbers he wanted to purchase—the DP4401e, DP4400e, and DP4600e radios manufactured by U.S. COMPANY 1. Later that day, HORVATH sent a follow-up note to U.S. PERSON 1, stating, "Will buy these! Will send all the info tomorrow for the invoice."

19. On or about March 31, 2023, HORVATH sent U.S. PERSON 1 the buyer and shipping information for this shipment of U.S. COMPANY 1 radios, listing the "bill to" as SPANISH COMPANY 1 and listing the shipping address as LATVIAN COMPANY 1. On or about April 1, 2023, U.S. PERSON 1 advised HORVATH that the "[p]ower supply, compact mic[rophone], and RSM [remote speaker microphone] will come from Europe. Radios from South Africa. Chargers and batteries from the USA." Later that same day, HORVATH responded, "Do you think we can try to ship those radios strait [*sic*] to Moscow? SA [South Africa] does not follow sanctions?" U.S. PERSON 1 did not respond to this message.

20. On or about April 2, 2023, U.S. PERSON 1 sent HORVATH a new email that included three separate sales orders for various U.S. COMPANY 1 radios and associated accessories. All sales orders list the "bill to" address as SPANISH COMPANY 1 and the "ship to"

address as LATVIAN COMPANY 1. One of the sales orders, Sales Order 25513, was for 170 units of three types of U.S. COMPANY 1 radios, the DP4401e, DP4400e, and DP4600e and related accessories. These were the same types of U.S. COMPANY 1 radios that HORVATH listed in his March 30, 2023, email, and subsequently asked U.S. PERSON 11 if such radios could be shipped directly from South Africa to Moscow. The total cost for Sales Order 25513 was $84,530.

21. Ultimately, HORVATH ordered 200 units of U.S. COMPANY 1 radios, the DP4401e, DP4400e, and DP4600e, for $97,664, documented in Sales Order 25513-1. HORVATH paid U.S. PERSON 1 $97,664 via international wire transfer on or about April 24, 2023.

22. On or about May 11, 2023, HORVATH caused U.S. PERSON 1 to ship these 200 U.S. COMPANY 1 radios from Miami, Florida to LATVIAN COMPANY 1. Enclosed within the shipment was invoice number 25513-1 in the amount of $97,664, billed to SPANISH COMPANY 1 and shipped to LATVIAN COMPANY 1. This shipment was detained on export by U.S. Customs and Border Protection.

23. According to a License Determination issued by the Department of Commerce, the DP4401e, DP4400e, and DP4600e radios manufactured by U.S. COMPANY 1 are classified under Export Control Classification Number (ECCN) 5A992.c. As a result, an export license from the Department of Commerce was required to lawfully export these items to certain end-users in Russia—a license that neither HORVATH nor any co-conspirator ever applied for or obtained.

24. HORVATH engaged in a total of four transactions with U.S. PERSON 1 for the export or attempted export of radios and associated accessories:

6

| Sales Order | Date of payment | Total |
|---|---|---|
| 22512 | 4/17/2023 | $19,438.40 |
| 25517 | 4/24/2023 | $59,973.00 |
| 25513-1 | 4/24/2023 | $97,664.00 |
| 25520 *(shipping cost for Sales Order 25513-1)* | 5/15/2023 | $1,960.75 |
| 25524 | 5/26/2023 | $10,686.00 |
| | | $189,722.15 |

Respectfully submitted,

EDWARD R. MARTIN, JR.
United States Attorney
D.C. Bar No. 481866

/s/ *Christopher Tortorice*
Christopher Tortorice
Assistant United States Attorney
Texas Bar No. 24048912
National Security Section
601 D Street, N.W.
Washington, D.C. 20530
Office: (202) 252-7155
Christopher.Tortorice@usdoj.gov

/s/ *Maeghan O. Mikorski*
Maeghan O. Mikorski
Assistant United States Attorney
D.C. Bar Number 90001976
N.Y. Bar Number 5406202
United States Attorney's Office
601 D Street, N.W.
Washington, D.C. 20530
Office: (202) 252-2656
Maeghan.mikorski@usdoj.gov

7

/s/ Sean R. Heiden
Sean R. Heiden
Trial Attorney
D.C. Bar No. 1617636
U.S. Department of Justice
National Security Division
950 Pennsylvania Avenue, N.W.
Washington, D.C. 20530
Office: (202) 514-8106
Sean.heiden2@usdoj.gov

## DEFENDANT'S ACKNOWLEDGEMENT

I, Bence Horvath, have read this Statement of Offense and have discussed it with my attorney. I fully understand this Statement of Offense. I agree and acknowledge by my signature that this Statement of Offense is true and accurate. I do this voluntarily and of my own free will. No threats have been made to me nor am I under the influence of anything that could impede my ability to understand this Statement of Offense fully.

Date: 05/08/2025

Bence Horvath
Defendant

## ATTORNEY'S ACKNOWLEDGEMENT

I have read this Statement of Offense and have reviewed it with my client fully. I concur in my client's desire to adopt this Statement of Offense as true and accurate.

Date: 5.8.2025

Justin Lugar
Attorney for Defendant

8