UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | |
| v. | : | 1:24-cr-401 |
| | : | |
| BENCE HORVATH | : | Judge Bates |
| | : | |
| Defendant. | : | |

**GOVERNMENT'S SENTENCING MEMORANDUM**

The United States of America, by and through its attorney, the United States Attorney for the District of Columbia, respectfully submits this memorandum in aid of sentencing. For the reasons stated below, the government recommends that the Court impose the statutory maximum sentence of 60 months' imprisonment, should the court apply an adjustment under U.S.S.G. §3B1.1, or 46 months, should the Court not apply an Aggravating Role Adjustment, followed by 36 months of supervised release, a guideline fine, and forfeiture.

**I. FACTUAL BACKGROUND**

Horvath and his co-conspirators built and executed an international procurement network designed to disguise the Russian destination of controlled U.S. goods. The scheme began at least in early 2023, when Horvath sought to purchase hundreds of U.S. COMPANY two-way radios from a U.S.-based seller ("U.S. SUPPLIER").

On January 23, 2023, Horvath initiated contact with U.S. SUPPLIER, the owner of a radio supply company in Brewster, Massachusetts. From the outset, Horvath used a combination of his personal identity and business aliases to negotiate the sale, communicating from Europe and indicating that the radios would be shipped to the European Union for use in the European Union.

By March 24, 2023, U.S. SUPPLIER had explicitly advised Horvath in writing that "US

Export LAWS" required accurate end-user information and prohibited shipment to Russia without a license. U.S. SUPPLIER told Horvath that the goods "cannot be shipped to Russia" and requested confirmation of the end user. This was a clear warning from a knowledgeable U.S. seller. Rather than abandon the deal, Horvath identified "Moscow Police" as the ultimate recipient, a designation that was itself a red flag confirming the radios were destined for Russian governmental use. He arranged for payment to be made from a Spanish corporate account, Blacksaphir Capital, S.L., operated by Horvath and BUSINESS PARTNER, and directed that the shipment be routed to a freight forwarder in Riga, Latvia, "for [LATVIAN FREIGHT FORWARDER COMPANY 2] Attn: [first name of LATVIAN FREIGHT FORWARDER]".

This Riga address was a transshipment hub, chosen to obscure the Russian end user and avoid direct Russia-bound paperwork. Using Latvia or other Russia-contiguous countries as an intermediary point is a common sanctions- and export controls-evasion tactic.

On May 11, 2023, a shipment of 200 radios, valued at $97,664, departed Miami for Riga. U.S. Customs and Border Protection detained the shipment on export from the United States before it could be forwarded to Russia. The waybill listed "[LATVIAN FREIGHT FORWARDER COMPANY 1] for [LATVIAN FREIGHT FORWARDER COMPANY 2] Attn: [first name of LATVIAN FREIGHT FORWARDER]" as the consignee.

A review of digital communications, financial records, and travel data confirmed Horvath's central role in planning, financing, and coordinating the shipment. His actions included selecting the radio models, arranging payment through Blacksaphir, directing U.S. SUPPLIER to ship to Latvia, and liaising with his mother and an employee of AO BudaPhone in Moscow to ensure receipt in Russia.

These steps were part of a broader conspiracy to supply the Russian security sector with U.S.-origin communications equipment after Russia's February 2022 invasion of Ukraine, a period when U.S. export controls on Russia were at their most restrictive in decades.

## II. GUIDELINES CALCULATION

As noted in the PSR, the base offense level for a violation of conspiracy to violate ECRA is 26. PSR ¶ 45; U.S. Sent'g Guidelines Manual §§ 2X1.1(a), 2M5.1(a)(1). This reflects the application of the conspiracy guideline, § 2X1.1, which directs the use of the substantive offense guideline for evasion of export controls and financial transactions with countries supporting terrorism, § 2M5.1(a)(1). The PSR then applies a three-level reduction for acceptance of responsibility, and a two-level reduction under the "zero-point offender" provision, U.S.S.G. §§ 4C1.1(a)–(b), for a total offense level of 21. PSR ¶¶ 52–55.

Since the defendant is a Criminal History Category I, his advisory guideline range is 37-46 months.

Should the Court grant the Government's objections to the Guideline calculation in the PSR and apply an aggravating role adjustment under § 3B1.1(a), the resulting guideline would be 70-87 months, accounting for the no longer applicable 2-point reduction under § 4C1.1. The resulting total offense level would be 27, which calls for a guideline range of 70-87 months. However, since the statutory maximum for a violation of 18 U.S.C. § 371 is 5 years, the guideline range would be 60 months.

## III. SENTENCING FACTORS UNDER 18 U.S.C. § 3553(a)

The government respectfully submits that a sentence of the statutory maximum, should the court apply an adjustment under U.S.S.G. §3B1.1, or at the high end of the Guidelines range (*i.e.*,

3

46 months) is appropriate. Indeed, while the government is not seeking an above-Guidelines sentence, Application Note 1 states that "in the case of a violation during time of war or armed conflict, an upward departure may be warranted." This, along with the sentencing factors articulated in 18 U.S.C. § 3553(a), underscore the need for a sentence at the statutory maximum or at high end of the Guidelines range, as relevant.

### A. Nature and Circumstances of the Offense

Horvath's offense was a deliberate, calculated, and highly sophisticated violation of U.S. export-control laws. He knowingly attempted to sell two-way radios with secure, long-range, encrypted capabilities to directly benefit Russian governmental entities. His chosen end user was a governmental actor operating under the direction of a hostile nation engaged in an active war of aggression.

Horvath's actions were not a one-off transaction or a misunderstanding of Department of Commerce licensing requirements. He was told his actions were illegal by the seller of the radios, but he proceeded anyway. Horvath implemented multiple layers of obfuscation through front companies, transshipment points in Eastern Europe, false end-user statements, and financial transactions through Spain, all to disguise the Russian end users. The scheme was designed to evade detection by U.S. authorities and the licensing apparatus intended to prevent precisely this kind of transfer.

In the context of ongoing hostilities in Ukraine and domestic unrest, Russia's military and internal and external security forces have committed acts condemned by the international community. Supplying these malign actors with this sort of technology risks enhancing the

effectiveness of those forces, allowing them to inflict more damage on civilian populations, prolong conflicts, including in Ukraine, and infringe on rights.

### B. History and Characteristics of the Offender

Under 18 U.S.C. § 3553(a)(1), the Court must consider "the history and characteristics of the defendant."

The PSR confirms that the defendant has no prior criminal convictions and qualifies as a "zero-point offender." PSR ¶ 54. While the absence of prior convictions is noted, it must be weighed against the seriousness of the instant offense, which involved deliberate conduct to evade U.S. export controls and facilitate transactions with a sanctioned and adversarial foreign power. This was not an impulsive or isolated act, but rather a calculated scheme that required planning and persistence.

The defendant's personal history reflects a stable upbringing and supportive family environment. Horvath benefitted from higher education, steady employment, and a strong support network. These advantages highlight that his criminal conduct was not the product of deprivation or lack of opportunity. He had every reason and ability to comply with the law, yet he chose to engage in conduct that undermines U.S. national security interests. His decision to engage in criminal conduct was not born out of necessity, but rather out of greed.

Horvath is married, maintains close ties with his children, and has a supportive family. The government does not minimize the hardship incarceration will impose on his family, but the defendant had resources and a support network available to him when he committed this offense, unlike many offenders who come before this Court.

Unlike defendants whose criminal conduct may be intertwined with addiction, untreated health issues, or economic desperation, Horvath cannot point to such factors to explain his criminal conduct. His offense reflects a conscious decision to violate the law despite having the capacity and opportunity to comply with it.

### C. The Need for the Sentence Imposed to Reflect the Seriousness of the Offense and Promote Respect for the Law

Congress has made clear that offenses involving the unlawful export of goods to sanctioned nations are serious crimes. The Sentencing Commission similarly recognizes this in setting a high base offense level under U.S.S.G. § 2M5.1(a)(1). These policy choices reflect the reality that violations of export controls and sanctions regimes are threats to U.S. national security and, in the case of Russia, threats to international order.

A sentence within the advisory range is necessary to reflect that seriousness. The defendant's conduct was deliberate, sustained, and calculated. As discussed *supra*, this was a knowing effort to circumvent laws designed to prevent sensitive goods from reaching a hostile foreign power.

Export control and sanctions regimes are only as strong as the willingness of individuals to abide by them. When exporters disregard those rules without adequate consequence, others are invited to do the same. That perception would weaken deterrence and diminish respect for the rule of law. A sentence that reflects the seriousness of the offense, however, reinforces the principle that national security laws are not optional, and that those who choose to ignore them, as Horvath has done, will face proportionate consequences.

Finally, a Guidelines-range sentence ensures just punishment. It balances the defendant's acceptance of responsibility and lack of prior criminal history with the gravity of conspiring to

6

supply a sanctioned adversary. In doing so, it fulfills the Court's obligation to impose punishment that is fair, proportionate, and consistent with the seriousness of the offense.

**D. The Need to Avoid Unwarranted Sentencing Disparities**

The proposed 60-month sentence aligns with the punishment imposed in numerous analogous cases,

In *United States v. Park*, No. 1:17-cr-00228 (D.D.C.), the defendant was convicted under the Arms Export Control Act for conspiring to export controlled defense-related software to South Korea without a license. The court applied U.S.S.G. § 2M5.1 and imposed a custodial sentence of 21 months. *See id.*, Judgment (D.D.C. 2018). Notably, the goods in *Park* were destined for South Korea, a U.S. ally, and the conduct did not occur during wartime. Yet the court still imposed a term of imprisonment, recognizing that violations of export control laws inherently undermine U.S. national security and foreign policy. This case illustrates that custodial sentences are the norm even where the unlawful exports are directed to friendly nations. By comparison, Horvath's conduct of exporting goods to Russia, a sanctioned adversary actively engaged in hostilities, presents a far more serious threat. If a 21-month custodial sentence was warranted in *Park* for exports to an ally, a Guidelines-range sentence is plainly justified here, where the destination was an adversary and the national security stakes are significantly higher.

In *United States v. Patsulya*, No. 2:23-cr-00770 (D. Ariz.), the defendant pleaded guilty to conspiring to export controlled aircraft components to Russia without a license, in violation of ECRA, as well as money laundering. Patsulya and his co-conspirators used shell companies, offshore accounts, and false documentation to conceal the true destination of Boeing 737 brake systems bound for Russian buyers, who were primarily commercial airline companies. The court

applied U.S.S.G. § 2M5.1, imposed enhancements for leadership and sophistication, and sentenced Patsulya to 70 months' imprisonment. *See* DOJ Press Release, Apr. 2, 2025.[1] By comparison, Horvath likewise conspired to export goods to Russia, and although Horvath's case may not involve the same goods, the destination and national security stakes are identical. In addition, while *Patsulya* involved mostly commercial end users, Horvath's Russian customers were primarily governmental entities associated with the Russian security apparatus. To impose a non-custodial or below-Guidelines sentence here would create an unwarranted disparity with *Patsulya*, where the court imposed nearly six years' imprisonment for similar conduct.

In *United States v. Goltsev & Nasriddinov*, No. 1:23-mj-00956 (E.D.N.Y.), the defendants, Nikolay Goltsev and Salimdzhon Nasriddinov conspired to export U.S.-manufactured electronics to sanctioned Russian companies. Using Brooklyn-based front companies, they routed shipments through intermediaries in Turkey, Hong Kong, India, China, and the UAE before delivering them to Russia. Some of the components were later recovered in Russian weapons platforms and signals intelligence equipment deployed in Ukraine, including drones, helicopters, and missile systems. To impose a non-custodial or below-Guidelines sentence here would create an unwarranted disparity with *Goltsev*, where the court imposed a 40-month prison term for similar conduct, which was one month shy of the high end of the Guideline range in that case.

### III.  The Role Adjustment and Its Sentencing Implications

As set forth in the government's Objection to the Presentence Report,[2] the facts support application of a four-level aggravating role adjustment under U.S.S.G. § 3B1.1(a). The Court has

---

[1]  https://www.justice.gov/opa/pr/leader-export-control-evasion-scheme-sentenced-70-months-prison

[2]  The government cannot provide the ECF number for this filing because it is under seal and

8

already been presented with the detailed factual basis in that filing, which demonstrates that Horvath exercised decision-making authority, recruited and directed multiple participants, and coordinated a complex, international procurement and transshipment network spanning at least five countries and involving numerous criminally responsible actors. Horvath was the central organizer and leader of the scheme.

While the government believes that a four-level aggravating role adjustment under U.S.S.G. § 3B1.1(a) is appropriate given the facts, U.S.S.G. § 3B1.1(b) provides for a three-level adjustment for managers/supervisors of criminal activity.[3] Even if this Court does not conclude that an adjustment under U.S.S.G. § 3B1.1(a) is appropriate, then the lesser adjustment under U.S.S.G. § 3B1.1(b) certainly is appropriate given the facts. For the reasons stated in the government's objection, the role adjustment should apply.

If the Court agrees, the Guidelines calculation results in total offense level of 27, which produces an advisory range well above the statutory maximum of 60 months.[4] In that event, a sentence of 60 months is appropriate and necessary to reflect the seriousness of the offense, promote respect for the law, and avoid unwarranted disparities with similarly situated defendants.

Even if the Court were to conclude that the technical requirements of § 3B1.1 are not satisfied, the same underlying facts remain highly relevant under 18 U.S.C. § 3553(a). Horvath was, in every practical sense, the leader of this enterprise. He initiated contact with suppliers,

---

therefore does not appear on the docket, but the government believes it is either ECF No. 34 or ECF No. 35.

[3] U.S.S.G. § 3B1.1(c) provides for a two-level increase if the defendant was an organizer, leader, manager, or supervisor in criminal activity not described in U.S.S.G. § 3B1.1(a)-(b), which could also be appropriate should the court conclude that neither U.S.S.G. § 3B1.1(a) nor (b) apply.

[4] An adjustment under U.S.S.G. § 3B1.1(b) or (c) results in a total offense level of 26 and 25, respectively, which result in Guideline ranges of 63-78 and 57-71 months, respectively.

arranged financing through foreign accounts, directed freight forwarding through Latvia, and coordinated with Russian end-users. There is no factual dispute that Horvath was the person calling the shots. That reality justifies a sentence at the top of the advisory Guidelines range, even absent a formal role enhancement. The logic underlying § 3B1.1—that those who organize and direct others in criminal activity are more culpable—applies equally here. A top-of-range sentence would therefore be warranted to account for Horvath's leadership role, whether or not the Court applies the adjustment formally.

## IV. CONCLUSION

For the foregoing reasons, the Government respectfully requests that the Court impose a sentence of 60 months' imprisonment, or, alternatively, 46 months if the Court does not apply an enhancement under § 3B1.1, a fine, and 36 months of supervised release. Such a sentence will appropriately reflect the seriousness of the offense, the defendant's acceptance of responsibility, and the need to deter others while avoiding unwarranted disparities.

JEANINE FERRIS PIRRO
UNITED STATES ATTORNEY

By:

　/s/　*Christopher Tortorice*
Christopher Tortorice
Assistant United States Attorney
Texas Bar No. 24048912
National Security Section
601 D Street, N.W.,
Washington, D.C. 20530
(202) 252-7155
christopher.tortorice@usdoj.gov

      */s/  Maeghan O. Mikorski*
Maeghan O. Mikorski
Assistant United States Attorney
D.C. Bar Number 90001976
N.Y. Bar Number 5406202
United States Attorney's Office
601 D St. NW
Washington, D.C. 20530
(202) 252-2656
Email: maeghan.mikorski@usdoj.gov


    */s/  Sean R. Heiden*
Sean R. Heiden
Trial Attorney
D.C. Bar No. 1617636
U.S. Department of Justice
National Security Division
950 Pennsylvania Avenue, NW
Washington, D.C. 20530
(202) 514-8106
sean.heiden2@usdoj.gov